# CRUM & FORSTER SURETY

UNITED STATES FIRE INSURANCE COMPANY
New York, New York

THE NORTH RIVER INSURANCE COMPANY
Morristown, New Jersey

TIG INSURANCE COMPANY
San Francisco, California

LOMBARD GENERAL INSURANCE COMPANY
OF CANADA
A Canadian Company

DEFENDANT'S EXHIBIT 2 HENRY JR.
PENGAD 800-631-6989

## GENERAL AGREEMENT OF INDEMNITY

THIS AGREEMENT is made by the undersigned individuals and contractor for the continuing benefit of United States Fire Insurance Company, North River Insurance Company, TIG Insurance Company, Lombard General Insurance Company of Canada and any and all affiliates, subsidiaries, divisions, successors, assigns, co-sureties and/or reinsurers (hereinafter collectively referred to as "Surety") for the purpose of saving Surety harmless and indemnifying it from all loss and expense Surety may incur in connection with any Bond issued on behalf of any one or more of the following persons, firms or corporations:

South Shore Utility Contractors, Inc.

(hereinafter referred to as "Contractor")

AHR Utility Corp.
Anthony F. Rosciti, Jr.
Henry Rosciti, Jr

(hereinafter referred to as "Indemnitors")

WITNESSETH

WHEREAS, the Contractor, individually or jointly or with others, or on behalf of any of its subsidiaries, affiliates, or divisions or their subsidiaries, affiliates or divisions now in existence or hereafter formed or acquired; or on behalf of individuals, partnerships, corporations or limited liability companies, may desire or be required from time to time to give certain bonds, undertakings, or instruments of guarantee (all of which will hereinafter be included within the term "Bond" or "Bonds"), and has requested or may hereafter apply to the Surety requesting the execution of such Bonds, or has requested or may request that the Surety refrain from retiring as Surety on such Bonds; and,

WHEREAS, upon the express condition that this instrument be executed, the Surety has executed or procured the execution of, and may hereafter execute or procure the execution of such Bonds; and,

WHEREAS, the undersigned Indemnitors have a substantial and beneficial interest in the Contractor and in having the Surety execute such Surety Bonds for the Contractor, or to refrain from retiring as Surety on such Bonds; and,

WHEREAS, the Contractor has or may enter into certain agreements (hereafter "Contracts") for which the Surety has or may furnish a Bond(s) that guarantee performance of a contract or payment of sub-contractors, creditors or both; and,

WHEREAS, the Contractor and the undersigned individuals, corporations, limited liability companies, partnerships, or other entities, individually and collectively, shall hereinafter be referred to as the "Indemnitors" and shall be jointly and severally liable for the obligations and commitments described herein; and,

WHEREAS, Surety has relied upon and will continue to rely upon the representations of the Indemnitors as to their character, identity, control, beneficial ownership, financial condition and existence in executing or procuring the Bonds,

NOW, THEREFORE, in consideration of the execution of any such Bond or Bonds and as an inducement to such execution, we the undersigned Indemnitors, agree and bind ourselves, our heirs, executors, administrators, successors and assigns, jointly and severally, as follows:

1) To pay all premiums on said Bonds computed in accordance with the Surety's rate filings, regular manual of rates in effect on the date said Bonds are executed, or as may be agreed.

2) To be held jointly and severally liable for, and to indemnify, keep indemnified, exonerate and hold Surety harmless from and against all demands, claims, loss, costs, damages, expenses and attorneys' fees of whatever kind or nature, sounding in contract, tort or otherwise, and any and all liability therefore, sustained or incurred by the Surety by reason of executing or procuring the execution of any said Bond or Bonds, or any other Bonds, which may be already or hereafter executed on behalf of the Contractor, or renewal or continuation thereof; or sustained or incurred by reason of making any investigation on account thereof, prosecuting or defending any action brought in connection therewith, obtaining a release therefrom, recovering or attempting to recover any salvage in connection therewith or any costs Surety may incur by reason of enforcing by litigation or otherwise this agreement. In the event of any payment by the Surety, the Indemnitors further agree that in any accounting between Surety and the Indemnitors, the Surety shall be entitled to reimbursement for any and all disbursements made by it in good faith in and about the matters contemplated by this Agreement under the belief it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity, or expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety. The Indemnitors agree to pay to Surety interest on all disbursements made or costs incurred by Surety at the maximum rate permitted by law calculated from the date of each such disbursement.

3) To furnish money to the Contractor or to the Surety as needed for the prompt payment of labor, materials, and any other costs, expenses or counsel fees in connection with the performance of contracts when and as requested to do so by the Surety.

4) To assign, transfer and convey, and grant security interest in and to, and the Indemnitors do by these presents assign, transfer and convey, and grant security interest in and to the Surety, as of the date of execution of said Bond or Bonds, as collateral security for the full performance of the covenants and agreements herein contained and the payment of any other indebtedness or liabilities of the Indemnitors to the Surety, whether heretofore or hereafter incurred, the following:

(a) all right, title and interest of the Indemnitors in and to all machinery, equipment, plant, tools, supplies and materials which are, on the date of execution of any such Bond or Bonds, or may thereafter be, about or upon the site of the work to be performed under the contract referred to in and guaranteed by such Bond, or elsewhere for the purpose thereof, including as well materials purchased for or chargeable to said contract which may be in the process of construction or in storage elsewhere or in transportation to said site;

(b) all right, title and interest of the Indemnitors in and to all machinery, equipment, plant, tools, supplies and materials owned by Contractor;

(c) all rights, actions, causes of action, claims and demands of the Indemnitors in, or arising from or out of, any Contract or any extensions, modifications, changes or alterations thereof or additions thereto;

(d) all rights, actions, causes of action, claims and demands whatsoever which the Indemnitors or any of them may have or acquire in any subcontract in connection with a Contract, and against any subcontractor or any person, firm or corporation furnishing or agreeing to furnish or supply labor, materials, supplies machinery, tools or other equipment in connection with or on account of a Contract, and against any surety or sureties of any such materialmen, subcontractor, laborer or other person, firm or corporation;

(e) all rights, title and interest to all contract balances and monies due or to become due to the Contractor and/or Indemnitors arising out of or in any way relating to any Contract including, but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work and claims and the proceeds thereof that at the time of abandonment, forfeiture or breach of any Contract or such Bond or Bonds, or of the terms of this Agreement or at the time of any advance, payment or guaranty by the Surety for the purpose of avoiding such abandonment, forfeiture or breach, may be due or may thereafter become due under said contract to or on behalf of the Indemnitors, together with any and all sums due or which may thereafter become due under or on all other contracts or agreements, bonded or unbonded, in which any or all of the Indemnitors have an interest;

(f) any and all rights, title, interest in, or use of any patent, copyright or trade secret which is or may be necessary for the completion of any bonded work; and

(g) all monies due or to become due to the Contractor and/or Indemnitors on any policy of insurance relating to any claims arising out of the performance of any contract, including, but not limited to, claims under builders risk, fire, employee dishonesty or workers compensation policies, including premium refunds.

The Indemnitors further agree to execute any and all documents and financing statements necessary to perfect the assignments and security interests granted hereunder

5) Each of the Indemnitors does hereby irrevocably nominate and appoint any officer of the Surety the true and lawful attorney-in-fact of the Indemnitors, with full right and authority, in the event the Contractor fails or is unable to complete the work called for by the contract guaranteed by any Bond or Bonds or in the event of the breach of the provision of this Agreement to execute on behalf of, and sign the names of the Indemnitors to, any voucher, release, satisfaction, check, bill of sale of all or any property by this Agreement assigned to the Surety or any other paper or contract necessary or desired to carry into effect the purposes of this Agreement; with full right and authority also, in such event, to dispose of the performance of said contract by subletting the same in the name of the Contractor or otherwise; and each of the Indemnitors does hereby ratify and confirm all that such attorney-in-fact or the Surety may lawfully enter the premises and further authorizes and empowers the Surety and such attorney-in-fact and each of them to enter upon and take possession of the tools, plant, equipment, materials and subcontracts and all other collateral security mentioned in this Agreement and enforce, use, employ and dispose thereof for the purposes set forth in this Agreement. Each of the Indemnitors specifically agrees to protect, indemnify and hold harmless the Surety and such attorney-in-fact against any and all claims, damages, costs and expenses that may in any way arise or grow out of the exercise of the assignments contained in this Agreement and the powers herein granted, specifically waiving any claim which any Indemnitor(s) has or might hereafter have against the Surety or such attorney-in-fact on account of anything done in enforcing the terms of this Agreement, assignments and power-of-attorney.

6) Where any Bond is executed in connection with a contract, the Indemnitors covenant and agree to hold all money or other proceeds of such contract, whether received as payment or as loans, as a trust for the benefit of laborers, materialmen, suppliers, subcontractors and the Surety and to use such money or other proceeds for the purpose of performing the contract and discharging the obligation of the Bond beneficiaries, and for no other purpose, until the Bond and the Surety's loss, costs, expenses and attorneys' fees are completely discharged. The Contractor will, upon demand of the Surety and in implementation of the trust or trusts hereby created, establish a trust account or accounts with a bank or similar depository designated by the Surety and approved by the Contractor, for the deposit therein of all monies received from the contract referenced in the Bond.

7) That if the Surety or any reinsurer shall be required or shall deem it necessary to set up a reserve in any amount to cover any claim, demand, liability, expense, fees for counsel, consultants or experts, suit, order, judgment or adjudication under or on any Bond or Bonds or for any other reason whatsoever, Indemnitors shall upon demand immediately deposit with Surety an amount of money sufficient to cover such reserve and any increase thereof, such funds to be held by Surety as collateral, in addition to the indemnity afforded by this instrument, with the right to use such funds or any part thereof, at any time, in payment or compromise of any liability, claims demands, judgment, damages, fees and disbursements or other expenses; and the Indemnitors, in the event of their failure to comply with such demand, which shall constitute a breach hereunder hereby authorize and empower any attorney or any court of record of the United States or any of its territories or possessions, to appear for them or any of them in any suit by Surety and to confess judgment against them or any of them for any sum or sums of money up to the amount of any and all Bond or Bonds, with costs, interest and reasonable attorneys' fees; such judgment, however, to be satisfied upon the payment of any and all such sums as may be found due by the Indemnitors to Surety under the terms of this Agreement. Demand shall be sufficient if sent by registered or certified mail to the Indemnitors at the address or addresses given herein or last known to Surety, whether or not actually received. The authority to confess judgment as set forth herein shall not be exhausted by any one exercise thereof, but may be exercised from time to time and more than one time until all liability of the Indemnitors to Surety shall have been paid in full

8) All collateral security held by or assigned to the Surety may be used by the Surety at any time in payment of any claim, loss or expense which the Indemnitors have agreed to pay hereby, whether or not such claim, loss or expense arises out of or in connection with such Bond or contract under which such collateral is held. The Surety may sell or realize upon any or all such collateral security, at public or private sale, with or without notice to the Indemnitors or any one of them, and with the right to be purchaser itself at any such public sale, and shall be accountable to the Indemnitors only for such surplus or remainder of such collateral security or the proceeds thereof as may be in the Surety's possession after it has been fully indemnified as in this Agreement provided. The Surety shall not be liable for decrease in value or loss or destruction of or damage to such security, however caused.

9) The Surety shall have the right, at its option and in its sole discretion:

(a) to deem this Agreement breached should the Contractor become involved in any agreement or proceeding of liquidation, receivership, or bankruptcy, voluntarily, or involuntarily, or should the Contractor, if an individual, die, be declared incompetent, be convicted of a felony, or become a fugitive from justice, or for any reason disappear and cannot immediately be found by the Surety by use of usual methods;

(b) to take possession of the work under any contract and at the expense of the Indemnitors to complete or to contract for the completion of the same, or to consent to the re-letting of the completion thereof by the obligee in said contract Bond or Bonds, or to take such other steps as in the discretion of the Surety may be advisable or necessary to obtain its release or to secure itself from loss thereunder;

(c) to adjust, settle or compromise any claim, demand, suit or judgment upon said Bond or Bonds, or any of them; and

(d) to increase or decrease the penalty or penalties of any such Bond or Bonds, to change the obligee or obligees therein, to execute any continuations, enlargements, modifications and renewals thereof or substitute therefore with the same or different conditions, provisions, and obligees, and with the same or larger or smaller penalties, it being agreed that this instrument shall apply to and cover such new or changed bonds or renewals even though the consent of the Surety may or does substantially increase the liability of the Indemnitors and to take such steps as it may deem necessary or proper to obtain release from liability under any such Bond or Bonds

All damage, loss or expense of any nature that the Surety may incur under this Section shall be borne by the Indemnitors

10) The Surety shall have the exclusive right for itself and for the Indemnitors to decide and determine whether any claim, demand, suit or judgment upon said Bond or Bonds shall, on the basis of liability, expediency or otherwise, be paid, settled, defended or appealed, and its determinations shall be final, conclusive and binding upon the Indemnitors; and any loss, costs, charges, expense or liability thereby sustained or incurred, as well as any and all disbursements on account of costs, expenses or attorneys' fees, deemed necessary or advisable by the Surety, shall be borne and paid immediately by the Indemnitors, together with interest at the maximum rate permitted by law from the date of each disbursement. In the event of any payment, settlement, compromise or investigation, an itemized statement of the payment, loss, costs, damages, expenses or attorneys' fees, sworn to by any officer of the Surety or the voucher or vouchers or other evidence of such payment, settlement or

compromise, shall be prima facie evidence of the fact and extent of the liability of the Indemnitors to the Surety in any claim or suit hereunder and in any and all matters arising between the Indemnitors and the Surety.

11) The Surety is further authorized and empowered to make or guarantee advances or loans to the Contractor which the Surety may see fit to advance to said Contractor for the purpose of any contract referred to in or guaranteed by said Bond or Bonds without any obligation to see to the application thereof. Surety is under no obligation whatsoever to make or guarantee any such advances or loans. All money so loaned or advanced and all costs, attorneys' fees and expenses incurred by the Surety in relation thereto, unless repaid with interest at the maximum rate permitted by law when due, shall be conclusively presumed to be a loss by the Surety for which each of the Indemnitors shall be responsible, notwithstanding said money or any part thereof so loaned or advanced to the Contractor for the purpose of any such contract should not be so used by the Contractor. The Indemnitors hereby waive all notice of such advance or loan, or of any default or any other act or acts giving rise to any claim under any said Bond or Bonds, and waive notice of any and all liability of the Surety under any said Bond or Bonds or any and all liability on the part of the Indemnitors to the effect and end that each of the Indemnitors shall be and continue to be liable to the Surety hereunder notwithstanding any notice of any kind to which the Indemnitors might have been or be entitled and notwithstanding any defenses which the Indemnitors might have been or be entitled to make.

12) No assent, assignment, change in time or manner of payment or other change or extension in the terms of any Bond or Bonds or of any contract referred to in any such Bond or Bonds or in the general conditions, plans or specifications incorporated in such contract, granted or authorized by the Surety or the refusal to so grant or authorize, shall release, discharge or in any manner whatsoever affect the obligations assumed by the Indemnitors in executing this General Agreement of Indemnity. This Agreement shall apply to any and all renewal, continuation or substitution bonds executed by the Surety. The Surety shall not be required to notify or obtain the approval or consent of the Indemnitors prior to granting, authorizing or executing any assent, assignment, change or extension. The Surety shall have the absolute right to cancel any bond in accordance with any cancellation provision contained therein and the Surety is hereby released from any liability for expenses, costs, or damage alleged to be sustained by the Indemnitors by reason of such cancellation.

13) Until the Surety shall have been furnished with competent legal evidence of its discharge without loss from any and all Bonds, the Surety shall have the right at all times to free access to the books, records and accounts of each of the Indemnitors for the purpose of examining same. Each of the Indemnitors hereby authorizes and requests any and all depositories in which funds of any of the Indemnitors may be deposited to furnish to the Surety the amount of such deposits as of any date requested and any person, firm or corporation doing business with the Indemnitors is hereby authorized to furnish any information requested by the Surety concerning any transaction. The Surety may furnish copies of any and all statements, agreements and financial statements and any information which it now has or may hereafter obtain concerning each of the Indemnitors, to other persons or companies for the purpose of procuring co-suretyship or reinsurance or of advising interested persons or companies. By this Agreement Indemnitors hereby authorize any bank depository, obligee, subcontractor, materialmen, supply house or other persons, firms or corporations when requested by Surety to furnish Surety any information requested, which included status of work under Contract(s) being performed by the Contractor, the condition of the work being performed, and payment of creditor accounts.

14) Each of the Indemnitors does hereby waive all right to claim any property, including homestead, as exempt from levy, execution, sale or other legal process under the law of any state, province or government as against the rights of the Surety to proceed against the same for indemnity hereunder.

15) The Surety shall have every right and remedy which a personal surety without compensation would have, including the right to secure its discharge from the suretyship and nothing therein contained shall be considered and construed to waive, abridge or diminish any right or remedy which the Surety might have if this instrument were not executed. The Indemnitors will, on request of the Surety, procure the discharge of the Surety from any Bonds, and all liability by reason thereof. Separate suits may be brought hereunder as causes of action may accrue, and the pendency or termination of any such suit shall not bar any subsequent action. The Surety shall be notified immediately by the Indemnitors of any claim or action that may result in a claim against the Surety, such notice to be given by registered mail to the Surety at its Home Office. In the event of legal proceedings against the Surety, upon or on account of any Bond or Bonds, the Surety may apply for a court order making any or all of the Indemnitors party defendants, and each of the Indemnitors hereby consents to the granting of such application and agree to become such a party defendant and to allow judgment, in the event of judgment against the Surety, to be rendered also against such Indemnitor in like amount and in favor of the Surety, if Surety so desires.

16) The Surety may decline to execute any Bond and the Indemnitors agree to make no claim to the contrary in consideration of the Surety's acceptance of this Instrument; and if the Surety shall execute a bid or proposal Bond, it shall have the right to decline to execute any and all of the Bonds that may be required in connection with any award that may be made under the proposal for which the bid or proposal Bond is given, and such declination shall not diminish or alter the liability that may arise by reason of having executed the bid or proposal Bond. The Indemnitors agree that they shall have no claim against the Surety arising out of or relating in any manner to the failure or refusal of any party to award any contract to the Contractor, or to accept any Bond executed by the Surety, or which the Surety has been asked to execute, all of which claims are hereby waived.

17) This Agreement shall, in all its terms and agreements, be for the benefit of and protect any person or company joining with the Surety in executing said Bond or Bonds, or any of them, or executing at the request of the Surety said Bond or Bonds, or any of them as well as any company or companies assuming co-suretyship or reinsurance thereon.

18) The Indemnitors warrant that each of them is specifically and beneficially interested in the obtaining of each Bond. Failure to execute, or defective execution, by any party, shall not affect the validity of this obligation as to any other party executing the same and each such other party shall remain fully bound and liable hereunder. Invalidity of any portion or provision of this Agreement by reason of the laws of any state or for any other reason shall not render the other provisions or portions invalid. Execution of any application for any Bond by the Contractor, or of any other indemnity agreement by the Indemnitors for the Contractor shall in no way abrogate, waive or diminish any rights of Surety under this Agreement. The Indemnitors acknowledge that the execution of this Agreement and their undertaking of indemnity was not made in reliance upon any representation concerning the financial responsibility of any Indemnitors, or concerning the competence of the Contractor to perform.

19) Each of the Indemnitors expressly recognizes and covenants that this Agreement is a continuing obligation applying to and indemnifying the Surety and that the rights of indemnification of each Surety signatory to this Agreement shall be individual and not joint with those of the other signatory Sureties as to any and all Bonds (whether or not covered by any application signed by the Contractor—such application to be considered between the parties hereto as merely supplemental to this Continuing Agreement of Indemnity) heretofore or hereafter executed by Surety on behalf of Contractor (whether contracting alone or as a co-venture) until this Agreement shall be canceled in the manner hereinafter provided. Any of the Indemnitors may notify the Surety at its Home Office, of such Indemnitor's withdrawal from this Agreement; such notice shall be sent by certified mail and shall state when, not less than thirty days after receipt of such notice by the Surety, such withdrawal shall be effective. Any such Indemnitor(s) will not be liable under this Agreement as to any Bonds executed by the Surety after the effective date of such notice; provided, that as to any and all such Bonds executed or authorized by the Surety prior to the effective date of such notice and as to any renewals, continuations and extensions thereof or substitutions therefore (and, if a proposal or Bid Bond has been executed or authorized prior to such effective date, as to any contract Bond executed pursuant thereto) regardless of when the same are executed, such Indemnitor(s) shall be and remain fully liable hereunder, as if said notice had not been served. Such withdrawal by any Indemnitor(s) shall in no way affect the obligation of the any other Indemnitor(s) who has given no such notice of termination.

20) The Contractor and Indemnitors warrant that for any contract which the Surety has issued or will issue a Bond, undertaking, or instrument of guarantee, the Contractor shall not assign its right to receive payments from the obligee to any third party, including a factor, without the express written consent of the Surety, executed by an officer of the Surety (not by an attorney-in-fact). The Indemnitors agree and acknowledge that if Contractor assigns its right to receive payments to a third party without the Surety's written consent, the Indemnitors shall upon Surety's demand, procure the discharge of the Surety from the Bond of such assigned contract or the Indemnitors shall immediately deposit with the Surety cash collateral equal to the penal sum of the Bond issued on such contract. If the Indemnitors do not procure the discharge of the Surety or they do not deposit the requisite collateral with the Surety, the Surety may obtain a judgment against the Indemnitors for the penal sum of the Bond plus costs of suit and reasonable attorneys' fees.

21) The Contractor agrees and hereby consents pursuant to section 49.404(e)(4) of the Federal Acquisition Regulations to allow the federal government of the United States, any federal agency, subdivision or instrumentality to reimburse the Surety for discharging its liabilities under a payment bond out of retained percentages, progress estimates for work accomplished prior to a termination, unpaid earnings and remaining job funds of the contract.

22) This Agreement or a carbon, photographic, xerographic or other reproduction or copy of this Agreement shall constitute a Security Agreement to Surety and also a Financing Statement, both in accordance with the provisions of the Uniform Commercial Code and every similar statute of every jurisdiction wherein such Code or similar statute is in effect, but that the filing or recording of this Agreement shall be at the sole option of the Surety and that the failure to do so shall not release or impair any of the obligations of the Undersigned under this Agreement or otherwise arising, nor shall such failure be in any manner in derogation of the rights of the Surety under this Agreement or otherwise.

23) The Contractor agrees to notify the Surety immediately upon their receipt of any notice or knowledge that his liability insurance has been or will be canceled, terminated or non-renewed, or that such coverage will be reduced.

24) Each Indemnitor is the agent for every other Indemnitor for the purpose of accepting service of any process in the jurisdiction in which the Indemnitor accepting the process resides, is domiciled, is doing business or is found. In the event Surety shall file suit at law or in equity to enforce the terms of this Agreement, Surety shall be entitled to recover its own attorneys' fees, expenses and costs in connection with such suit.

25) The Indemnitors agree among themselves and hereby acknowledge to Surety that notification by Surety to any one Indemnitor shall constitute notification to all Indemnitors.

26) The rights and remedies afforded to the Surety by the terms of this Agreement may not be waived or modified orally and no written change or modification shall be effective until signed by an authorized employee of the Surety.

27) The Indemnitors agree to waive and do hereby waive any defense that this instrument was executed subsequent to the date of any such Bonds, admitting and covenanting that such Bonds were executed pursuant to Contractor's request and in reliance upon Indemnitors' promise to execute this Agreement.

28) The Indemnitors have read and understand this Agreement. Except for any previous indemnity agreement or agreements executed by any Undersigned, this Agreement of Indemnity constitutes the entire agreement between the parties. No other separate agreements of understandings, past, present or future whether oral or written change the terms of the agreement.

29) The Indemnitors represent and warrant that each has had the opportunity to review this instrument with counsel of his or her own choice before executing this instrument which subjects them to (1) legal process in the State of New York, which means each can be sued in New York without objection to the location of the court or the inconvenience such location causes; (2) judgment without a hearing by confession of judgment; (3) in the event of any trial, to a trial by judge alone because of the waiver of the right to a trial by jury (4) and all other consequences as more particularly set forth elsewhere in this instrument. Each Indemnitor executes this instrument knowing it to be a legal document and intending to be bound thereby.

30) Separate suits may be brought under this Agreement by or on behalf of Surety as causes of action accrue, and the pendency or termination of any such suit shall not bar any other action by Surety.

31) This Instrument shall be governed by, construed and enforced in accordance with the laws of the State of New York without regard to its principles of conflicts of laws. The Indemnitors hereby agree and consent to the jurisdiction of the courts of the State of New York and agree that any disputes arising between the Indemnitors and the Surety shall be litigated in the Supreme Court of the State of New York or in the Southern District Of New York of the United States District Court, unless the Surety elects or consents in writing to litigate elsewhere.

32) Indemnitors agree that rights under this Agreement are in addition to and not in derogation of the Surety's legal and equitable rights and that no action taken hereunder shall be construed as a waiver of subrogation or other rights, including equitable rights.

33) The validity and effect of this Agreement shall not be impaired by and the Surety shall incur no liability on account of, and Indemnitors need not be notified of:

a. The Surety's failure or refusal to furnish any Bond (including final bond or bonds where Surety has furnished a bid bond.

b. The Surety's consent or failure to consent to changes in terms and provisions of any Bond, or of the obligation or performance secured by any bond.

c. The taking, failing to take, or release of security, collateral, assignments, indemnity agreements and the like, as to any Bond.

d. The release by the Surety, on terms satisfactory to it, of any Indemnitor.

e. Information which may come to the attention of the Surety that affects or might affect it rights or liabilities or those of Indemnitors.

34) This Agreement shall become effective when executed by all parties and may be executed in counterparts, any one of which shall be deemed to be an original instrument. Any proof of the Agreement shall require production of only one such counterpart duly executed by the party to be charged therewith.

Signed, sealed, and dated this 21 day of June, 2004.

**Contractor and Indemnitor**
South Shore Utility Contractors, Inc.

By: ____________________ (Seal)
Name & Title: Anthony F. Roscitt, Jr., President
Address: 44 Maria Avenue, Johnston, RI 02919

Attest:

By: ____________________ (Seal)
Name & Title:

**Indemnitor**
AHR Utility Corp.

By: ____________________ (Seal)
Name & Title: Anthony F. Roscitt, Jr., President
Address: 44 Maria Avenue, Johnston, RI 02919

Attest:

By: ____________________ (Seal)
Name & Title:

Indemnitor
Anthony F. Rosciti, Jr., Individually

By: _______________ (Seal)
Name: Anthony F. Rosciti, Jr.
Address: 15 Morgan Court, Lincoln, RI 02865

Attest:

By: _______________ (Seal)
Name:

Indemnitor
Henry Rosciti, Jr., Individually

By: _______________ (Seal)
Name: Henry Rosciti, Jr., Individually
Address: 1324 Chopmist Hill Road, North Scituate, RI 02857

Attest:

By: _______________ (Seal)
Name:

UNITED STATES FIRE INSURANCE COMPANY
NORTH RIVER INSURANCE COMPANY
TIG INSURANCE COMPANY
LOMBARD GENERAL INSURANCE COMPANY OF CANADA

By: _______________
Name & Title:

IMPORTANT: Print or type the name and address of each signatory to this Agreement. Each signature must be acknowledged.

CORPORATE ACKNOWLEDGMENT

State of Rhode Island
ss:
County of PROVIDENCE

On this 21 day of JUNE, in the year 2004 before me personally came Anthony F. Rosciti, Jr. to me known, who, being by me duly sworn, deposes and says that he resides in the City of Johnston, RI that he is the President of the South Shore Utility Contractors, Inc. the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

_______________
(Signature and Title of Official taking acknowledgement)
Notary Public, residing at _______________
(Commission expires 2-14-07

CORPORATE ACKNOWLEDGMENT

State of Rhode Island
ss:
County of PROVIDENCE

On this 21 day of JUNE, in the year 2004 before me personally came Anthony F. Rosciti, Jr. to me known, who, being by me duly sworn, deposes and says that he resides in the City of Johnston, RI that he is the President of the AHR Utility Corp. the corporation described in and which executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation; and that he signed his name thereto by like order.

_______________
(Signature and Title of Official taking acknowledgement)
Notary Public, residing at _______________
(Commission expires 2-14-07

INDIVIDUAL ACKNOWLEDGMENT

State of Rhode Island

County of Providence ss:

On this 21 day of June, 2004 before me personally appeared Anthony F. Rosciti, Jr. to be known and known to me to be the individual(s) described in and who executed the foregoing Agreement and acknowledged that he/she/they executed the same for purposes, considerations and uses therein set forth as his/her/their free and voluntary act and deed.

(Signature and Title of Official taking acknowledgement)
Notary Public, residing at ________
(Commission expires 2-14-07)

INDIVIDUAL ACKNOWLEDGMENT

State of Rhode Island

County of Providence ss:

On this 21 day of June, 2004 before me personally appeared Henry Rosciti, Jr. to be known and known to me to be the individual(s) described in and who executed the foregoing Agreement and acknowledged that he/she/they executed the same for purposes, considerations and uses therein set forth as his/her/their free and voluntary act and deed.

(Signature and Title of Official taking acknowledgement)
Notary Public, residing at ________
(Commission expires 2-14-07)

**IMPORTANT: Attach certified copy of Resolution authorizing execution of this instrument by Corporation or Limited Liability Company members.**

## COPY OF RESOLUTION OF THE BOARD OF DIRECTORS

At a meeting of the Board of Directors of AHR Utility Corp. ("Company") duly called and held on the 4.20.04 day of April, 2004, a quorum being present, the following Preamble and Resolution was adopted:

"WHEREAS, this Company is beneficially and materially interested in the transactions in which South Shore Utility Contractors, Inc. has applied, or may hereafter apply to UNITED STATES FIRE INSURANCE COMPANY, THE NORTH RIVER INSURANCE COMPANY, TIG INSURANCE COMPANY AND LOMBARD GENERAL INSURANCE COMPANY OF CANADA for various bonds or undertakings, and

"WHEREAS, the UNITED STATES FIRE INSURANCE COMPANY, THE NORTH RIVER INSURANCE COMPANY, TIG INSURANCE COMPANY AND LOMBARD GENERAL INSURANCE COMPANY OF CANADA are willing to consider such bonds or undertakings as surety, upon being furnished with the written indemnity of this Company, therefore be it

"RESOLVED, that Anthony F. Rosciti, Jr. ____________, ____________, ____________,

of the Company is (are) hereby authorized to execute on behalf of the Company, any agreement or agreements of indemnity required by the UNITED STATES FIRE INSURANCE COMPANY, THE NORTH RIVER INSURANCE COMPANY, TIG INSURANCE COMPANY AND LOMBARD GENERAL INSURANCE COMPANY OF CANADA as a prerequisite to the execution by it of the bonds or undertakings for which Company in connection with the matters or transactions described in the agreement of indemnity required by said UNITED STATES FIRE INSURANCE COMPANY, THE NORTH RIVER INSURANCE COMPANY, TIG INSURANCE COMPANY AND LOMBARD GENERAL INSURANCE COMPANY OF CANADA, and the aforementioned representative(s) of the Company is (are) hereby authorized to affix the corporate seal to such agreement of indemnity and subscribe his (their) name(s) thereto, in behalf of the Company.

"BE IT FURTHER RESOLVED, that any prior acts of said officers or any officers or representatives of this Company in executing said indemnity agreement or agreements on behalf of the Company are hereby ratified."

I, Anthony Rosciti, Secretary of South Shore Utility Contractors, Inc. have compared the foregoing Preamble and Resolution with the original thereof, as they appear on the records of the meetings of the Board of Directors of said Company, and do certify that the same is a correct and true transcript therefrom, and of the whole of said original Preamble and Resolution.

Given under my hand and seal of the company this 20 day of April, 2004.

AHR Utility Corp.

Secretary [signature]