**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

CASTLE EQUIPMENT COMPANY,

Plaintiff,

v.

UNITED STATES FIRE INSURANCE COMPANY,

Defendant/Third Party Plaintiff,

v.

ANTHONY F. ROSCITI, JR.

Third Party Defendant.

Civil Action No. 07-98-S-DLM
(consolidated with 08-96S)

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF UNITED STATES FIRE INSURANCE COMPANY'S MOTION FOR SUMMARY JUDGMENT AND IN OPPOSITION TO CASTLE EQUIPMENT COMPANY'S CROSS-MOTION FOR SUMMARY JUDGMENT**

## PRELIMINARY STATEMENT

Defendant/Third-Party Plaintiff, United States Fire Insurance Company ("U.S. Fire"), submits this reply memorandum of law in further support of its motion for summary judgment against Castle Equipment Company ("Castle"). U.S. Fire seeks summary judgment on the ground that Castle is not a proper claimant under the payment bonds issued by U.S. Fire because Castle is majority-owned and controlled by Anthony F. Rosciti, Jr. ("Rosciti"), the same individual who owned and controlled South Shore Utility Contractors, Inc. ("South Shore"), the bond principal, and is also a personal indemnitor to U.S. Fire. In addition, U.S. Fire submits this memorandum of law in opposition to Castle's cross-motion for summary judgment against U.S. Fire.

The parties agree that there are no genuine issues of material fact with respect to the U.S. Fire's motion for summary judgment. In particular, Castle does not dispute the following facts:

- Rosciti was an owner, President and Treasurer of South Shore and in that capacity controlled the business operations of South Shore;
- Rosciti is the 70% majority-owner, President and Treasurer of Castle and in this capacity controls the business operations of Castle;
- South Shore, controlled by Rosciti, did not pay Castle for equipment rental;
- Castle, controlled by Rosciti, continued to rent equipment to South Shore without receiving payment for equipment rental;
- Rosciti, as President and Treasurer of Castle, submitted the payment bond claims to U.S. Fire on behalf of Castle for the unpaid equipment rental; and
- Rosciti, as a personal indemnitor to U.S. Fire in connection with the bonds issued to South Shore, is obligated to indemnify U.S. Fire for any payments that U.S. Fire may be required to make to Castle for the equipment rental unpaid by South Shore.

Castle also does not dispute that based on these contested facts it would not be permitted to recover against U.S. Fire under the federal case law interpreting the Miller Act statute

governing payment bonds on federal construction projects. Accordingly, the parties agree that the narrow legal issue before this Court is whether, under the undisputed facts, the states of Rhode Island and Massachusetts would adopt the federal Miller Act precedent and deny coverage under a payment bond to a claimant that is majority-owned and controlled by the same individual who owns and controls the principal, and is also an indemnitor to the payment bond surety.

Castle argues that a plain reading of the public works bond statutes of Rhode Island and Massachusetts irrefutably leads to the conclusion that the courts of those states would reject the Miller Act precedent in finding that Castle's "insider" payment bond claims are improper. Simply put, Castle is asking this Court to begin and end its inquiry based solely on the fact that language of the applicable public works bond statutes does not address "insider" payment bond claims. Castle's argument flies in the face of the fact that the federal Miller Act bond statute similarly does not address "insider" payment bond claims. In addition, Castle's argument ignores the fact that the Rhode Island and Massachusetts bond statutes are both modeled after the Miller Act and courts in both states have routinely looked to cases interpreting the Miller Act for guidance on issues of first impression.

There are no reported decisions in Rhode Island or Massachusetts that have addressed the issue of "insider" payment claims under the applicable bond statutes. Thus, given the similarities between the Miller Act and the Massachusetts and Rhode Island public works bond statutes, and the fact that Rhode Island and Massachusetts look to the Miller Act for guidance, it is U.S. Fire's position that courts in these states would follow the reasoning and holding of the Miller Act cases and reject the claims of "insiders" in order to prevent the obvious fraud, circuity of action

and inequity that such claims present. Accordingly, U.S. Fire respectfully requests that this Court grant its motion for summary judgment.

In addition to opposing U.S. Fire's motion for summary judgment, Castle has also filed a cross-motion for summary judgment against U.S. Fire for judgment in the principal amount of $331,301.38 under the subject payment bonds issued by U.S. Fire. To the extent this Court grants U.S. Fire's motion for summary judgment, Castle's cross-motion for summary judgment is moot. In the event U.S. Fire's motion for summary judgment is denied, however, there are genuine issues of material fact that preclude summary judgment in favor of Castle. Based on the deposition testimony of Anthony Rosciti, Jr. and Daniel Clifford, the corporate officers of Castle, as well as the documentation (or lack thereof) submitted by Castle in support of its alleged claims, there are genuine issues of material fact regarding: (1) whether Castle's undertook reasonable efforts to mitigate its alleged damages; and (2) whether equipment allegedly rented by Castle to South Shore was used or employed on one of the bonded projects. Therefore, Castle's cross-motion for summary judgment must be denied.

## ARGUMENT

## POINT I

**U.S. FIRE IS ENTITLED TO SUMMARY JUDGMENT BECAUSE CASTLE IS NOT A PROPER CLAIMANT UNDER THE PAYMENT BONDS ISSUED BY U.S. FIRE**

U.S. Fire does not contend, as Castle suggests, that the Miller Act "is the legal authority controlling the construction and application of the [subject] payment bonds."[1] In fact, U.S. Fire, in its moving brief, acknowledged that the payment bond claims asserted by Castle in this matter are governed by the public works bond statutes of Rhode Island and Massachusetts. Courts in Rhode Island and Massachusetts, however, have not addressed the issue of whether a payment bond provides coverage to a corporation that is owned and controlled by the same individual who owns and controls the bond principal. Because both the Rhode Island and Massachusetts public works bonding statutes are modeled after the Miller Act and the courts of those states look to the Miller Act for guidance, U.S. Fire submits that courts in Rhode Island and Massachusetts would follow the Miller Act precedent in finding that Castle's "insider" payment bond claims are improper.

### A. THERE IS NO DISPUTE THAT FEDERAL COURTS HAVE RECOGNIZED THE BASIC SURETYSHIP PRINCIPLE THAT "INSIDERS" ARE IMPROPER CLAIMANTS UNDER PAYMENT BONDS

Castle does not dispute that federal courts have recognized that "insiders," including corporations that are controlled by the same individual who controls the principal named in the bond, are improper claimants under payment bonds. Indeed, the recognition of this basic suretyship principle is well established. *See, e.g.*, *Hardaway v. Nat'l Sur. Co.*, 211 U.S. 552, 561 (1909); *U.S. ex rel Briggs v. Grubb*, 358 F.2d 508, 512 (9th Cir. 1966); *Theobald-Jansen Elec. Co. v. P.H. Meyer Co.*, 77 F.2d 27 (10th Cir. 1935); *U.S. ex rel Johnson Pugh Mech., Inc. v.*

[1] *See* Castle's Memorandum of Law at pg. 10.

*Landmark Const. Corp.*, 318 F. Supp. 2d 1057 (D. Colo. 2004); *American Casualty Co. of Reading, PA v. Assiran*, 289 F.Supp. 645, 646 (D. Mass. 1968); *Nat'l State Bank of Newark v. Terminal Const. Co.*, 217 F. Supp. 341, 361 (D.N.J. 1963); *U.S. ex rel Walker v. U.S. Fid. & Guar. Co.*, 4 F. Supp. 854, 855 (D. Wyo. 1933).

Instead, Castle argues that the rule is inapplicable because it is a separate and distinct legal entity from South Shore. This argument, however, is misplaced. Indeed, the "insider" rule was established in order to prevent a separate entity from asserting a claim under a bond issued on behalf of another entity when both entities are controlled by the same individual. *See Johnson Pugh*, 318 F. Supp. 2d at 1073. Otherwise, as the United States District Court for the District of Wyoming noted:

> The principal contractor might as well be entitled to recover for his own default against his own surety . . . . Such a rule of law would open the door to fraud of a serious type.

*U.S. ex rel Walker v. United States Fidelity & Guaranty Co.*, 4 F. Supp. 854, 855 (D. Wy. 1933)(emphasis added).

Given the rationale for the "insider" rule, cases adopting this principle have found a payment bond claimant to be an insider even where that claimant is a separate entity from the principal. *See, e.g., Assiran, Johnson Pugh, Walker* and *Theobald-Jansen, supra*. These courts have held:

> The true relationship must be determined by the conduct of the parties, together with all other material facts and circumstances.

*Johnson Pugh*, 318 F. Supp. 2d at 1070. Accordingly, the fact that Castle is a separate legal entity from South Shore is irrelevant for purposes of applying the "insider" rule.[2]

[2] A review of the precedent cited by Castle further demonstrates their immateriality to this matter as none of cases concern suretyship law or the principle reflected in the "insider" rule. *See Doe v. Gelineau*, 732 A. 2d 43 (R.I. 1999)(victims of abuse at orphanage sought to pierce the corporate veil); *Sunrise Properties, Inc. v. Bacon, Wilson,*

### B. Castle Cannot Maintain its Claim under the Bond because the Undisputed Facts Show that Rosciti had Common Ownership and Control of Both Castle and South Shore and Rosciti is a Personal Indemnitor of U.S. Fire

Castle does not dispute that Rosciti owns and controls both Castle and South Shore, nor does it dispute that Rosciti is obligated to indemnify U.S. Fire for any losses it sustained as a result of having issue the bonds on behalf of South Shore. Given these admissions, it is clear that the "insider" rule precludes Castle from recovering under the bond issued on behalf of South Shore.

An entity that is controlled by the same person who controls the principal named in the bond or has otherwise agreed to indemnify the surety is precluded from recovering from that bond. *See Johnson Pugh*, 318 F. Supp. 2d at 1073. For instance, in *Assiran*, the United States District Court for the District of Massachusetts held that the claimant was precluded from asserting a claim under the bond because it was controlled by the same individual who controlled the principal. *Assiran,* 289 F. Supp. at 647.

The facts in this case are similar to those in *Assiran*. Castle admits that Rosciti was the President and Treasurer of South Shore, and owned 50% of the company. *See* Affidavit of Anthony Rosciti, Jr. at ¶ 5; *see also* Affidavit of Adam Schwartz ("Schwartz Aff."), Ex. B at 5 and C at 22:17-22, 60:18-20. Castle also admits that Rosciti was the President and Treasurer of Castle, and owned 70% of the company. *See* Affidavit of Anthony Rosciti, Jr. at ¶ 2; *see also* Schwartz Aff., Ex. B at 4-5 and Ex. C at 32:10-25, 33:1-5, 60:21-23. As the individual controlling both companies, Rosciti acknowledged that he was able to avoid paying Castle in order to use the relevant project funds to pay other creditors of South Shore. Rosciti testified:

---

*Ratner, Cohen, Salvage, Fialky & Fitzgerald, P.C.*, 425 Mass. 63, 679 N.E. 2d 540 (1997)(insurer sought declaratory judgment that policy afforded no coverage for a particular claim); *U.S. v. Bestfoods*, 524 U.S. 51, 118 S. Ct. 1876 (1998)(United States brought action against parent corporation of chemical manufacturers).

Q: Did there come a time when Castle had a large receivable that was owed by South Shore to Castle?
A: Yes

***

Q: Now, as president of South Shore, did you make a decision not to pay Castle for certain equipment rental?

A: Yes

Q: And why did you make that decision?

A: Because I had other people banging on the door for money, and Castle was probably the easiest people not to pay.

Q: And why would they be the easiest people not to pay?

A: Because I own [Castle].

*See* Schwartz Aff. ¶ 5, Ex. C at 40:12-18, 41:1-10.

Rosciti also admitted that his control over both Castle and South Shore permitted him to have Castle continue renting equipment to South Shore even though Castle was not receiving payment for the prior rentals. Rosciti testified:

Q: [A]s president of Castle Equipment, why did Castle Equipment let those 2005 invoices age to become such a large receivable?

***

A: I think I answered your question before. It was easy not to pay me, basically.

*See* Schwartz Aff. ¶ 5, Ex. C at 59:14-24. Daniel Clifford, Castle's minority-owner, likewise, testified:

Q: [B]efore South Shore filed for receivership, why did Castle continue to rent equipment to South Shore when there was a large receivable?

A: I always thought we were going to get paid.

> Q: But is it fair to say that you never continued to rent equipment to any other client with a receivable that large?
>
> A: Yes.
>
> Q: So why was it different with South Shore then?
>
> A: Because of Anthony [Rosciti].
>
> ***
>
> Q: But you never had any other customer that had a receivable this large that you continued to rent equipment to?
>
> A: Not this large.

*See* Schwartz Aff. ¶ 9, Ex. G at 72:25, 73:1-6, 78:11-24, 79:7-10.

Instead of disputing the control that Rosciti possessed over Castle and South Shore, Castle recites extraneous facts that disregard the simple truth in this lawsuit that, Rosciti, wearing his Castle "hat," is seeking payment from U.S. Fire because Rosciti, while wearing his South Shore "hat," elected not to compensate Castle. The fundamental unfairness of the claim becomes even more evident when considering that Rosciti, who controls and is a majority owner of Castle, is a personal indemnitor to U.S. Fire, and has an obligation to indemnify U.S. Fire for any payment made to Castle.

Based on these undisputed facts, and the suretyship principle recognized by *Assiran*, *Johnson Pugh*, *Walker* and *Theobald-Jansen*, Castle is an "insider" and, thus, not permitted to recover as a payment bond claimant.

### C. RHODE ISLAND AND MASSACHUSETTS COURTS WOULD UNDOUBTEDLY ADOPT THE MILLER ACT PRECEDENT THAT PRECLUDES AN INSIDER FROM RECOVERING UNDER A PAYMENT BOND

There is no dispute that the payment bond claims asserted by Castle in this matter are governed by the public works bond statutes of Rhode Island and Massachusetts. *See* Mass. Gen.

Laws 149 § 29; R.I. Gen. Laws § 37-12-1 *et seq.* Courts in Massachusetts and Rhode Island, however, recognize that their respective state bond statute is modeled after, and is closely analogous to the Miller Act, 40 U.S.C. § 3133. *See, e.g.*, *Warren Bros. Co. v. Cardi Corp.*, 471 F. 2d 1304, 1307 (1st Cir. 1973). The First Circuit in *Warren Bros.* explained:

> [Federal decisions under the Miller Act] are, of course, relevant to our determination of what the Massachusetts courts would decide if faced with the issue before us.
>
> * * *
>
> We find the [Miller Act] language completely applicable to the comparable Massachusetts statutes before us. While the appellee argues that the Miller Act and Mass. G.L. ch. 149, § 29 are separate and distinguishable statutes it makes no attempt to specifically suggest any substantive differences between the two. Indeed, the statutes are closely analogous . . . . we find that the Supreme Judicial Court of Massachusetts would follow the line of analogous federal cases under the Miller Act . . .

*Id.* Accordingly, federal decisions relating to the Miller Act are relevant to the determination of equivalent issues arising from "Little Miller Acts." *Id.* This is especially true where there is no precedent on point in the relevant jurisdiction. *Id.*

The courts in Massachusetts and Rhode Island recognize the precedential value of Miller Act cases in interpreting their respective bond statutes. *See*, *e.g.*, *First National Ins. Co. of America v. Commonwealth of Mass.*, 391 Mass. 321, 324, 461 N.E.2d 789 (1984) (applying Massachusetts law holding "[w]e are guided by numerous federal decisions which have applied the federal performance and payment bond statute, the Miller Act."); *M. Lasden, Inc. v. Decker Elec. Corp.*, 372 Mass. 179, 183, 360 N.E.2d 1068 (1977) (applying Massachusetts law and recognizing the Miller Act as the "federal counterpart to [Mass. Gen. Laws 149] § 29" and relying on interpretive case law to determine coverage under payment bond); *Sims Corp. v. The Hartford Acc. & Indem. Co.*, 1979 WL 195994, *1 (R.I. Super. Ct. 1979) (applying Rhode Island

law and holding "[s]ince § 37-12-1 *et seq* is modeled after the federal statute known as the Miller Act . . . an analysis of decisions under this Act is helpful."); *Koury Steel Erection v. United Iron Works, Inc.*, 1975 WL 169980 (R.I. Super. Ct. 1975) (recognizing that Rhode Island bond statute "is based upon and substantially identical to [the Miller Act] and that "construction given the Miller Act by the federal courts furnish guidance."). Given the similarities between the Miller Act and the Massachusetts and Rhode Island public works bond statutes, and the fact that Rhode Island and Massachusetts look to the Miller Act for guidance, courts in Rhode Island and Massachusetts would follow the reasoning and holding of the Miller Act cases and reject the claims of "insiders" on their respective public works payment bonds. *Duteau v. Salvucci*, 330 Mass. 531, 535, 115 N.E.2d 726 (1953). ("The remedy created by [the public works bonding] statute does not extend to the general contractor."); *John Marini Management Co. v. Butler*, 70 Mass. App. Ct. 142, 873 N.E. 2d 1150 (App. Ct. 2007)(relying on Miller Act precedent); *Barboza v. Aetna Casualty and Surety Company*, 18 Mass. App. Ct. 323, 465 N.E. 2d 290 (App. Ct. 1984)(relying on Miller Act precedent and noting that the Miller Act is "an analogous federal statute").

Castle's contention that Massachusetts and Rhode Island would not follow the "insider" principle because the rule is not specified in the state payment bond statutes is mistaken. The "insider" rule is grounded in principles of suretyship law and is not contained in the language of the Miller Act. In other words, the Miller Act, much like the Massachusetts and Rhode Island public construction payment bond statutes, does not reference the "insider" rule or any other general suretyship law principle. The rule, nevertheless, has been recognized and enforced by federal courts interpreting the Miller Act. *Assiran*, 289 F.Supp. 645, 646; *Johnson Pugh*, 318 F. Supp. 2d 1057; *Walker*, 4 F. Supp. 854, 855 and *Theobald-Jansen*, 77 F.2d 27.

Castle's reliance on a few cases from Massachusetts that supposedly deviate from federal precedent is also misplaced. Unlike the "insider" rule that derives from general suretyship principles, the issues addressed in the cases cited by Castle concern actual interpretation of statutory language. *See Peters v. Hartford Accident and Indemnity Company*, 377 Mass. 863 (1979); *Carter v. Com.*, 290 Mass. 97 (1935); *Ross v. Planet Insurance Co.*, 361 Mass. 852 (1972). Indeed, the *Peters* case even recognizes the language differences in the legislative history between the Miller Act and the Massachusetts bond law in analyzing the limited issue before that court. *Peters*, 377 Mass. at 868 n. 12.

The issue here, on the other hand, is not based upon statutory language or interpretation, but rather the application of suretyship principles precluding an "insider" from recovering under a payment bond. The rule has been recognized under federal law and, much like other general suretyship principles, would be adhered to by courts in Massachusetts and Rhode Island given the similarities between the Miller Act and the Massachusetts and Rhode Island public works bond statutes, and the fact that Rhode Island and Massachusetts look to the Miller Act for guidance. *Warren Bros. Co*, 471 F. 2d at 1307; *Sims Corp.*, 1979 WL 195994, *1.

Castle's reliance on *Cleveland Wrecking Co. v. Nova Casualty Co.*, 2001 WL 1823604 (W.D.N.Y.) and *National Union Fire Insurance Company of Pittsburgh, Pa. v. Electric Transit, Inc.*, 2007 WL 73576 (N.D. Ca. 2007) is equally unavailing. First, other cases have recognized the "insider" principle outside of the Miller Act. In *Boka Electrical Construction Co. v. W.M. Chappell, Inc.*, 262 F. 2d 718 (C.A.D.C. 1958), the court recognized the "insider" principle when reviewing a claim asserted under the bond statute of the District of Columbia. The Court held:

> We concluded that [the claimant] is entitled to recover under [the bond] for material or labor or both if the trial court finds that either or both had been provided under such an arrangement with [the principal] as to make [the principal] responsible therefore and used

> by him on the project. The contrary would be true if the arrangement between [the principal] and [claimant] were a joint venture, or similar undertaking, of such nature that payment to one should equitably be considered as payment to either.

*Id.* at 722.

Second, the *Cleveland Wrecking* and *Electrical Transit* cases are also factually inapposite. In *Cleveland Wrecking* the "insider" claim was premised upon the allegation that a project manager and employee of the principal had assumed management of the claimant's entire job and represented themselves as the claimant throughout the project. 2001 WL 1823604 at * 3. Here, on the hand, the undisputed facts demonstrate that Rosciti was not merely an employee of Castle, but controlled both entities and used this control to cause Castle to continue renting equipment to South Shore even though it was not being compensated for prior equipment rentals. Moreover, Rosciti is also a personal indemnitor to U.S. Fire in connection with the bonds issued to South Shore and is obligated to indemnify U.S. Fire for any payments that U.S. Fire may be required to make to Castle. *See* Schwartz Aff. ¶ 4, Ex. B at 11 (Rosciti admitting execution of the Indemnity Agreement); *see also* Schwartz Aff. ¶ 5, Ex. C at 53:6-13, 61:18-22 (Rosciti admitting obligation to indemnify U.S. Fire for any amounts paid to Castle). These facts were also absent in *Electrical Transit* where the sole issue was whether the claimant and principal were joint venturers, 2007 WL 735766 * 2, an important distinction as is recognized by Castle. *See* Castle's Memorandum of Law at 24-25.

In addition, the *Cleveland Wrecking* court does not even explain or cite to any precedent supporting its divergence from the federal Miller Act precedent. Similarly, the *Electrical Transit* court does not set forth its reasons or cite to any precedent, other than the unsupported opinion in *Cleveland Wrecking*, for its deviation from the well established "insider" rule or its disregard of

federal Miller Act cases. *Assiran,* 289 F.Supp. 645, 646; *Johnson Pugh,* 318 F. Supp. 2d 1057; *Walker*, 4 F. Supp. 854, 855 and *Theobald-Jansen*, 77 F.2d 27.

Courts in Rhode Island and Massachusetts have repeatedly relied on federal Miller Act precedent and established suretyship principles when analyzing claims asserted under their respective bond statutes. *Warren Bros. Co*, 471 F. 2d at 1307 (recognizing similarities between Miller Act and M.G.L. c. 149, sec. 29 and finding "that the Supreme Judicial Court of Massachusetts would follow the line of analogous federal cases under the Miller Act."); *Koury Steel Erection*, 1975 WL 169980 at *1 (recognizing that Rhode Island bond statute "is based upon and substantially identical to [the Miller Act] and that "construction given the Miller Act by the federal courts furnish guidance."). Therefore, Rhode Island and Massachusetts would follow the "insider" suretyship principle that precludes Castle from recovering under the bonds issued on behalf of South Shore because both entities are owned and controlled by Rosciti. Accordingly, it is respectfully requested that the Court enter summary judgment in favor of U.S. Fire dismissing Castle's claims with prejudice.

## POINT II

## GENUINE ISSUES OF MATERIAL FACT PRECLUDE SUMMARY JUDGMENT IN FAVOR OF CASTLE

In addition to opposing U.S. Fire's motion for summary judgment, Castle has also filed a cross-motion for summary judgment against U.S. Fire seeking judgment in the principal amount of $331,301.38 under the subject payment bonds issued by U.S. Fire. To the extent this Court grants U.S. Fire's motion for summary judgment, Castle's cross-motion for summary judgment is moot. In the event U.S. Fire's motion for summary judgment is denied, however, there are genuine issues of material fact that preclude summary judgment in favor of Castle. Based on the deposition testimony of Anthony Rosciti, Jr. and Daniel Clifford, the corporate officers of Castle, as well as the documentation submitted by Castle in support of its alleged claims, there are genuine issues of material fact regarding: (1) Castle's failure to mitigate its alleged damages; and (2) Castle's failure to support its alleged claim under the payment bond issued by U.S. Fire on the Earle Street project.

### A. CASTLE IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT REGARDING CASTLE'S FAILURE TO MITIGATE ITS ALLEGED DAMAGES

It is a general rule under both Rhode Island and Massachusetts law that a plaintiff, such as Castle, is required to make a reasonable effort to mitigate its damages.[3] *Tomaino v. Concord Oil of Newport, Inc.*, 709 A.2d 1016, 1026 (R.I. 1998) (holding under Rhode Island law that party claiming damages for breach of contract "has a duty to exercise reasonable diligence and ordinary care in attempting to minimize its damages."); *Burnham v. Mark IV Homes, Inc.,* 441 N.E.2d 1027, 1034 (Mass. 1982) (stating general rule in Massachusetts that "a plaintiff may not

---

[3] In response to the Complaints filed by Castle in this consolidated matter, U.S. Fire pled, among others, the defense of failure to mitigate damages as an Affirmative Defense. *See* U.S. Fire's Answer to Castle's Complaint in RI and MA matters.

recover for damages that were avoidable by the use of reasonable precautions on [its] part.”). As stated by the Supreme Court of Rhode Island, “[t]his rule prevents the injured party from sitting silent while the damages accumulate.” *Bibby's Refrigeration, Heating & Air Conditioning, Inc. v. Salisbury*, 603 A.2d 726, 729 (R.I. 1992). It is also clear under both Rhode Island and Massachusetts law that whether a plaintiff undertook reasonable efforts to mitigate its damages is a question for the trier of fact to decide. *Tomaino*, 709 A.2d at 1027 (applying RI law and stating “[w]hether the plaintiff failed reasonably to mitigate damages was a question … for the jury to decide.”); *Dowse, Inc. v. Brockunier*, 1992 WL 64767, *4 (Mass.App.Div. 1992) (applying MA law and stating determination of the reasonableness of efforts by plaintiff to mitigate damages presents question of fact for trial court).

Based on the present record before this Court, it is undisputed that Castle continued to rent equipment to South Shore without receiving payment for the equipment rental. The Affidavit of Daniel Clifford submitted in opposition to U.S. Fire’s motion and in support of Castle’s cross-motion unequivocally states that “Castle continued to supply equipment to South Shore but South Shore was not paying Castle.” Affidavit of Daniel Clifford ¶ 26. It is also undisputed that Castle never continued to rent equipment to any other client that had a receivable as large as South Shore. Clifford testified:

> Q: But is it fair to say that you never continued to rent equipment to any other client with a receivable that large?
>
> A: Yes.
>
> Q: So why was it different with South Shore then?
>
> A: Because of Anthony.

***

> Q: But you never had any other customer that had a receivable this large that you continued to rent equipment to?
>
> A: Not this large.

*See* Schwartz Aff. ¶ 9, Ex. G at 78:11-24, 79:7-10.

Despite this policy, the large receivable owed by South Shore to Castle and Rosciti's decision as President of South Shore not to pay Castle, Castle continued to rent equipment to South Shore based on Rosciti's ownership interest and control of both South Shore and Castle. These undisputed facts not only demonstrate the inequity of allowing Castle to assert a claim against U.S. Fire, but also, at a minimum, support the defense that Castle utterly failed to mitigate its damages. In the event this Court denies U.S. Fire's motion for summary judgment, a genuine issue of material fact exists regarding whether Castle took reasonable efforts to mitigate its damages by continuing to rent equipment to South Shore despite knowledge of South Shore's financial difficulties and a lack of payment from South Shore. Accordingly, Castle's cross-motion for summary judgment must be denied.

### B. CASTLE IS NOT ENTITLED TO SUMMARY JUDGMENT BECAUSE THERE ARE GENUINE ISSUES OF MATERIAL FACT REGARDING WHETHER THE EQUIPMENT RENTED BY CASTLE TO SOUTH SHORE WAS USED OR EMPLOYED ON THE EARLE STREET PROJECT.

Castle is seeking to recover the principal amount of $331,301.38 under the following payment bonds issued by U.S. Fire on behalf of South Shore:

| | |
|---|---|
| Obligee: | City of New Bedford, MA |
| Project: | Earle Street Sewer Separation ("Earle Street Project") |
| Bond No.: | 6102446391 ("Earle Street Bond") |
| Bond Date: | January 1, 2005 |

| | |
|---|---|
| Obligee: | Town of Burrillville, RI |
| Project: | Glendale Village Sanitary Sewers |
| Bond No.: | 6102466659 |
| Bond Date: | March 1, 2005 |

*See* Schwartz Cert. ¶ 5, Ex. C; Rosciti Aff. ¶¶ 11, 19. Castle alleges that it is owed $233,396.38 for rental equipment supplied to South Shore on the Earle Street Project, and $97,905.00 for rental equipment supplied to South Shore on the Glendale Village Project. *See* Rosciti Aff. ¶ 28.

In addition to the Earle Street Project, South Shore simultaneously entered into a separate construction contract with the City of New Bedford for a public works project known as "West End Sewer Separation" ("West End Project"). Similar to the Earle Street Project, U.S. Fire, as surety, issued a Construction Payment Bond, bearing bond no. 6102446409, on behalf of South Shore, as principal, and in favor of the City of New Bedford, as obligee, in connection with the West End Project. *See* Affidavit of Christopher E. Kunkel, Esq. ("Kunkel Aff.") ¶ 3, Ex. A. The effective date of the West End Bond is January 1, 2005, the same date as the Earle Street Bond. *Id.* Accordingly, it is undisputed that South Shore was concurrently performing work in New Bedford, Massachusetts on both the Earle Street Project and the West End Project.[4] Rosciti testified:

> Q: Did South Shore have another project going on in New Bedford, Massachusetts at the same time?
>
> A: I believe so.
>
> Q: What was the name of that other project?
>
> A: …West End maybe.
>
> Q: So, South Shore had two projects. Was the owner the Town of New Bedford?
>
> A: Yes.
>
> Q: One was called West End, one was called Earl Street?

[4] We note that Castle does not reference the West End Project in its motion papers and, perhaps in an attempt to divert the Court's attention from the issue, refers to the Earle Street Project and Earle Street Bond as the "New Bedford Project" and "New Bedford payment bond."

> A: Yes.

*See* Kunkel Aff. ¶ 4, Ex. B at 44:17-25, 45:1.

The Earle Street Bond and the West End Bond are governed by M.G.L. c. 149, sec. 29. Based on the language of that statute, and subject to other available surety defenses, it is axiomatic that in order for a subcontractor, such as Castle, to maintain a claim against a payment bond, the subcontractor must prove that the labor and/or materials were furnished to the subject project. *See M. Lasden, Inc. v. Decker Elec. Corp.*, 360 N.E.2d 1068, 1070 (Mass. 1977) (confirming M.G.L. c. 149, sec. 29 provides protection for labor and materials "used or employed" in construction of public work involved).

In support of its alleged claim in the amount of $233,396.38 under the Earle Street Bond, Castle submitted a Proof of Claim to U.S. Fire that attached copies of certain invoices and equipment rental contracts. *See* Kunkel Aff. ¶ 5, Ex. C; *see also* Rosciti Aff. ¶ 28, Ex. C (attaching copies of invoices only). The invoices and equipment rental contracts submitted by Castle, however, fail to establish that the equipment rented by Castle to South Shore was used or employed on the Earle Street Project. Rather, the documents produced by Castle in support of its alleged claim under the Earle Street Bond only contain general references to "New Bedford." *Id*. Moreover, none of the equipment rental contracts are signed by South Shore. *Id.* Rosciti, as President, Treasurer and majority-owner of Castle testified, in his capacity as the Fed. R. Civ. P. 30 (b)(6) representative of Castle, as follows:

> Q: When you signed this proof of claim, which says that all this equipment was used on the Earl Street project, did you consider whether or not the equipment was also used on the West End project in New Bedford?
>
> A: I don't recall.

> Q: You don't recall whether you considered that sort of allocation issue?
>
> A: There may have been an issue. I don't know. To be honest with you, I don't recall.
>
> Q: Well, let's look at one of the equipment rental contracts. I'm looking at number 1291, which is about four pages in.
>
> Q: And in the middle, or the top third of it, there's a reference to, it says, to be delivered to lessee at New Bedford.
>
> A: Um-hmm.
>
> Q: Do you know if that … equipment rental contract was to the West End or Earl Street contract with New Bedford?
>
> A: I don't know.
>
> Q: Is there any way to know?
>
> A: Off of this document, no.
>
> Q: And these equipment rental contracts, and you can look through them all in this exhibit, they all reference only the New Bedford. Isn't that correct?
>
> A: Yes.
>
> Q: This equipment rental contract, 1291, you can see that there's a signature line at the bottom that says customer acceptance and responsibilities, and it has a sentence there, a line there for the lessee's signature. It's not signed by South Shore. Do you know why?
>
> A: I don't know why.
>
> Q: And actually, none of the equipment contracts are signed by South Shore. Do you know why none of them are signed?
>
> A: I don't know why.

*See* Kunkel Aff. ¶ 4, Ex. B at 45:25, 46:1-24. When asked about the same documentation, Clifford, Castle's Vice President and minority-owner, likewise, testified:

> Q: Does Castle have any records to show whether the equipment rented by Castle to South Shore was used particularly … on the Earl Street contract or the West End contract?
>
> A: I don't know.
>
> ***
>
> Q: Is it fair to say that you're not sure if that equipment was used on something called an Earl Street contract or a West End contract when you saw it?
>
> A: I wouldn't know, no.

*See* Kunkel Aff. ¶ 6, Ex. D at 75:18-23, 77:18-22.

As set forth above, South Shore was performing work in New Bedford, Massachusetts on the Earle Street Project and the West End Project at the same time. Castle alleges that it is owed $233,396.38 under the Earle Street Bond for rental equipment supplied to South Shore on the Earle Street Project. Based on the testimony of Clifford and Rosciti, the corporate officers of Castle, as well as the documentation (or lack thereof) submitted by Castle in support of its alleged claim under the Earle Street Bond, however, there are genuine issues of material fact as to whether the equipment rented by Castle to South Shore was used or employed on the Earle Street Project. Accordingly, to the extent U.S. Fire's motion for summary judgment on the "insider" status of Rosciti is denied, Castle's cross-motion for summary judgment must also be denied.

## CONCLUSION

For the foregoing reasons, U.S. Fire respectfully requests that this Court grant its motion for summary judgment, and deny Castle's cross-motion for summary judgment.

UNITED STATES FIRE INSURANCE COMPANY,

Defendant/Third-party Plaintiff,
By its Attorneys,

/s/ Stephen J. Brouillard
Stephen J. Brouillard, Esq. # 6284
Orson and Brusini Ltd.
325 Angell Street
Providence, RI 02906
Tel.: (401) 223-2100
Fax: (401) 861-3103
Email: sbrouillard@orsonandbrusini.com

/s/ Adam R. Schwartz
Adam R. Schwartz, Esq., *pro hac vice*
Christopher E. Kunkel, Esq., *pro hac vice*
McElroy, Deutsch, Mulvaney & Carpenter, LLP
1300 Mount Kemble Avenue
Morristown, NJ 07962
Tel.: (973) 993-8100
Fax: (973) 425-0161
Email: aschwartz@mdmc-law.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 14, 2008 this document has been filed electronically with the Court, is available for viewing and downloading from the ECF system, and has been served by first class mail, postage prepaid, on the following individuals:

/s/ Stephen J. Brouillard